UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, O'Brien and Russell
Argued at Fredericksburg, Virginia

EKATERINA A. CHAPIN

MEMORANDUM OPINION* BY
v.        Record No. 1541-15-4         JUDGE ROSSIE D. ALSTON, JR.
                                       AUGUST 29, 2017
BRYAN THEODORE CHAPIN


FROM THE CIRCUIT COURT OF WARREN COUNTY
Ronald Lewis Napier, Judge

Andrew J. Muzic (Marilyn Ann Solomon; Solomon Law Group,
on briefs), for appellant.

Norman A. Thomas (John G. Cadden; Norman A. Thomas, PLLC;
John G. Cadden, P.C., on brief), for appellee.


Ekaterina A. Chapin ("wife") appeals several of the trial court's rulings related to the

parties' divorce. She specifically challenges evidentiary and discovery rulings, equitable

distribution rulings regarding the classification and valuation date of certain property, and the

trial court's decision not to award her attorney's fees. Bryan T. Chapin ("husband") assigns

cross-error, arguing that the trial court erred in overruling his plea in bar and refusing to enforce

the terms of the parties' prenuptial agreement. We disagree with both parties' assignments of

error, and affirm the trial court's ruling.

BACKGROUND

The parties met in 2001, via an online agency that pairs American men with Russian

women for potential marriage. After some initial correspondence, the parties met face to face on

multiple occasions, discussing, among other things, their plans to marry and husband's desire for

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

a prenuptial agreement. After obtaining a "fiancé visa" to come to the United States, wife arrived at husband's home in Middletown, Virginia, in September 2001.

At his request, husband's attorney prepared a prenuptial agreement. The agreement's terms "reserved to each party their separate property, allowed [husband] to protect his retirement savings and children's inheritances, and waived spousal support." On November 20, 2001, the parties met with a translator who also served as a notary public. During this meeting, the translator translated the terms of the agreement for wife from English to Russian. Although wife seemed upset after hearing the translation, she declined husband's offer of additional time to consider the agreement. The parties then signed the agreement, and the translator notarized it.

Both parties provided financial disclosures in the agreement; husband valued his assets at a total of $1,795,800, while wife valued hers at $500. Neither party disclosed any income or liabilities. In 2001, husband's liabilities totaled $545,974.76. If husband's liabilities (in addition to his total adjusted gross income of $46,131) had been factored into the total value of his assets, the total value would have been $1,295,956.44.

The parties were married on November 29, 2001, and separated on February 19, 2011, when wife left the marital home. Wife filed for divorce on April 26, 2013, and sought spousal support, equitable distribution, and an attorney's fee award.[1] On July 2, 2013, husband answered wife's complaint and filed a plea in bar based on the parties' November 20, 2001 prenuptial agreement. Husband asserted that the agreement barred wife from receiving equitable distribution, support, or fees.

---

[1] One child was born of the marriage, but issues pertaining to the child were otherwise resolved.

A. PRETRIAL MATTERS

The pretrial history of this matter is significant and critical to appellate review of this matter.

On April 15, 2014, in advance of trial, the trial court heard evidence regarding husband's plea in bar asserting the validity of the prenuptial agreement signed by both parties and seeking the enforcement of its provisions. At the hearing, wife testified that she was not provided with a copy of the prenuptial agreement in Russian and that she did not understand the legal terms of the agreement or its waiver. She also stated that she never discussed the agreement with an attorney because she could not afford one. Husband testified that he did not offer to financially assist wife to ensure that she understood the terms of the agreement. The trial court issued a letter opinion on May 27, 2016, concluding that it was persuaded by the analysis of a sister circuit court in the case of Odom v. Odom, CH22323, 2003 Va. Cir. LEXIS 110 (Va. Cir. Ct. June 11, 2003). It further stated:

> [A]s was the case in Odom, the Chapin prenuptial agreement contains factual recitals that are incorrect. The agreement references Exhibit A attached thereto and states that [husband] has made a full and accurate disclosure of "the nature, extent and probable value of his property, income, assets and liabilities." On the contrary, no statement was made regarding his income or liabilities. If one is to assume that absence of any recital of liabilities means that there are none, then by the same standard, one must assume that the husband here has no income. Given his disclosed wealth, that would be an absurd conclusion.

Ultimately, the trial court found that the terms of the agreement were unconscionable, noting that the disparity in assets between the parties "shocks the conscience." In support of its decision, the trial court also cited wife's limited English vocabulary, and the fact that wife did not have the means to pay for an attorney. The trial court entered an order overruling the plea in bar on June 16, 2014, and husband's objections were noted.

Husband filed a motion to reconsider in April 2015 regarding the trial court overruling his plea in bar, which the trial court denied. In its letter opinion, dated June 26, 2015, the trial court stated: "[Husband]'s disclosure of his financial condition was incomplete and that, together with the unconscionability of the agreement (I have previously found), renders the agreement unenforceable." The trial court entered an order denying the motion on July 9, 2015, and husband's objections were noted on the order.

On May 21, 2015, wife filed a motion to value certain assets, including bank accounts and stocks, as of the date of separation. In support of her motion, wife stated that husband sold the stock after their separation. In regard to the bank accounts, wife contended that such accounts were marital in nature and that they contained substantial sums at the time of the separation, but were liquidated by husband following the separation. Wife argued that it would be "inequitable to value these particular marital assets [and accounts] as of the date of trial because [husband] disposed of them and kept the money, depriving the marital estate of hundreds of thousands of dollars."

In addition, wife filed a motion *in limine* on July 1, 2015, seeking to exclude husband's expert witness, Stuart Rosenberg. Wife argued that husband's identification of his expert witness was in violation of the scheduling order and the parties' subsequent agreement to extend the expert deadline. Specifically, wife argued that the expert witness should be allowed to opine as to business valuation, but not the source(s) of funds used to purchase marital assets. On July 6, 2015, wife filed a memorandum in support of the motion. Wife also filed a motion for attorney's fees, focusing significantly on the delay caused by husband and husband's refusal to provide complete responses to wife's discovery requests. Husband disputed that the expert had not been timely disclosed.

Ultimately, the trial court permitted Rosenberg to testify.

The trial was held on July 9, 10, and 13, 2015. At the outset, the trial court admitted wife's exhibits into evidence and Rosenberg's report. At that time wife stated, somewhat contrary to her pretrial position, that she had no objection to the report, but reserved the right to cross-examine Rosenberg about it. Wife also confirmed that she had no objection to Rosenberg testifying. Wife renewed her request that the trial court value particular assets as of the date of separation because husband had disposed of them prior to that date. In response, husband argued that he could prove through his expert that those assets existed in the form of another asset. Wife responded that she had not received in discovery "any evidence [supporting husband's assertion as to] where [the] money went." She further argued that good cause existed to change the valuation date for certain property because husband "sold the assets. He took them. And they're not . . . there anymore." Husband stated that he provided an explanation as to where the assets were in his findings of fact and conclusions of law. The trial court denied wife's motion regarding her request for an alternative valuation date.

During the trial, the trial court heard evidence that the parties married on November 29, 2001, and separated on February 19, 2011. Wife testified that she has not worked since she came to the United States from Russia to marry husband. While married to husband, wife took care of the parties' minor child and the duties related to up keeping their household.

At the time of the parties' marriage, husband owned stock in a company called Applied Software, Inc. (ASI). Husband worked at ASI throughout the marriage, receiving an annual salary of between $20-30,000 from ASI. Because of his stock holdings in ASI, which predated the marriage, husband also received distributions from the company. Wife received a salary from ASI during the marriage as well. Wife's annual salary from ASI was $6,000 per annum. Both parties' ASI salaries were deposited into a Sandy Spring Bank checking account that

husband maintained prior to the parties' marriage. This account was used to pay the parties' routine household expenses. Testimony established that the parties used their ASI salaries to pay all of their household and living expenses, and only once the salaries had been exhausted, would they use other funds, such as husband's ASI distributions.

Certain accounts and pieces of property are pertinent to this appeal: specifically, brokerage accounts denominated UBS 072 and 073 (which husband testified he opened in 2009), two ASI notes that were paid down during the marriage, real property located at 229 Serenity Lane, and items of personalty, including a 2008 Harley Davidson motorcycle, a 2002 Kawasaki Mule, a Steinway piano, a 2002 Winnebago, and a 2003 Eurovan.[2]

After wife rested her case, husband moved to strike the evidence relying on the prenuptial agreement, arguing that husband did not want to waive the ability to appeal the enforceability of the agreement. The trial court overruled husband's motion.

Stuart Rosenberg, a witness qualified as an expert in forensic accounting and taxation, testified that he was hired to trace husband's assets to their original source. Rosenberg testified that husband's salary from ASI constituted marital property. The UBS account that existed at the time of the trial was funded with the transfer of the asset that was in a Morgan Stanley account around March 2009. Rosenberg concluded that UBS 072 was 95.52% husband's separate property and that while UBS 073 was opened during the marriage, in February 2009, 100% of it came from husband's separate property. The Sandy Spring Bank checking account, which received all of the paychecks during the marriage, was opened prior to the marriage. Rosenberg testified that everything except $909 could be traced to husband's separate property.

---

[2] This list does not represent all of the parties' property that was subject or potentially subject to equitable distribution. Many other items were considered by the trial court, including jewelry, paintings, etc. The parties, however, do not challenge the trial court's classification of those pieces of property, and thus, they are not pertinent to this appeal.

At the conclusion of his evidence, husband renewed his motion to strike, again arguing that the prenuptial agreement should be enforced. The trial court once more denied husband's motion to strike.

## C. TRIAL COURT'S FINDINGS

The trial court issued a letter opinion on August 28, 2015, finding that wife's "credibility was quite problematic. . . . [Husband] on the other hand, presented himself as a truthful and precise witness. He had positive credibility." The trial court also indicated that it found Rosenberg's testimony to be "useful and persuasive" and characterized his analysis as "sound." After classifying the parties' property, the trial court, in distributing the marital property, extensively considered each of the factors in Code §§ 20-107.3(E) and 20-107.1(E).

At the outset of the letter opinion, the trial court stated that classification of property would be made as of the date of separation, while valuation of the property would be made as of the trial date. The trial court found that the ASI stock was husband's separate property because he acquired it years before the parties married. Further, "all interest, dividends and earnings distributions from ASI are also [husband]'s separate property." With regard to the brokerage accounts at issue, the trial court adopted Rosenberg's evaluation of what constituted husband's separate property and what constituted marital property. Regarding the 229 Serenity Lane property, the trial court, based on the evidence, concluded that it was hybrid property, with 1.5% being marital property and the remainder husband's separate property. The trial court found that the remaining accounts, notes, and items of personal property, even if acquired during the marriage, were husband's separate property, either by gift, or having been purchased with husband's separate property.

## D. POST-TRIAL MATTERS

Wife filed an extensive and wide-ranging motion for reconsideration in response to the trial court's letter opinion. The trial court heard the motion on May 4, 2016. Wife argued that the expert's report and testimony were replete with inadmissible hearsay and that the trial court erred when it found husband's evidence sufficient to find certain real and personal property qualified as husband's separate property. Specifically, wife argued that husband used marital funds to pay down liens against UBS 072, Dawn Star I, and three parcels of real estate. Wife also argued that the trial court's valuation dates were inappropriate.

Further, wife argued that the trial court erred in its failure to award her attorney's fees. She argued that husband forced her to incur almost a quarter of a million dollars in fees and more than $20,000 in costs. Wife further argued that husband made it "difficult, onerous and expensive for her to gather any information regard[ing] ASI right down to resigning as vice president three months before trial so she couldn't serve a subpoena on ASI." Wife maintained that a significant portion of her attorney's fees was incurred in the dispute over the enforceability of the prenuptial agreement, and trying to ascertain the financial assets without husband's cooperation. Wife also claimed that she had to fight for every document that they were given. Lastly, wife argued that it was error not to award her attorney's fees because the trial court found that she was entitled to maintenance and support, and husband had the ability to meet those needs.

At a hearing on July 8, 2016, the trial court found that while wife incurred the majority of attorney's fees in setting aside the prenuptial agreement, "[a] lot of the attorney's fees were incurred pursuing other relief that [it did not] think was really warranted." In an order, entered on July 8, 2016, the trial court denied wife's motion to reconsider. Wife signed the order as seen

and objected to for all the reasons delineated in wife's motion to reconsider, and at the hearing

for the same, and for the reasons raised at trial and by wife's motion *in limine*.

The trial court ultimately entered the parties' final decree of divorce on July 8, 2016.

Therein, the trial court indicated that it heard wife's motion for additional attorney's fees and

declined to award her any further attorney's fees over the $30,000 she had already received.

Both parties noted their objections in writing of the final decree. This appeal and cross-error

followed.

ANALYSIS

 I.  The Trial Court did not Err in Concluding that the Prenuptial Agreement was Unenforceable.

From a practical standpoint, because resolution of husband's assignment of cross-error

would theoretically be dispositive of all issues, we first address his argument that the trial court

erred in finding the prenuptial agreement unenforceable.

In general, Virginia law recognizes that prenuptial agreements are contracts that "should

be interpreted and enforced no differently than any other type of contract." Smith v. Smith, 43

Va. App. 279, 286, 597 S.E.2d 250, 254 (2004). Unlike other contracts, however, prenuptial

agreements are subject to being declared unenforceable pursuant to Code § 20-151. In pertinent

part, Code § 20-151 provides as follows:

> A.  A premarital agreement is not enforceable if the person against
> whom enforcement is sought proves that:
>
> 1.  That person did not execute the agreement voluntarily; or
>
> 2.  The agreement was unconscionable when it was executed and,
> before execution of the agreement, that person (i) was not provided
> a fair and reasonable disclosure of the property or financial
> obligations of the other party; and (ii) did not voluntarily and
> expressly waive, in writing, any right to disclosure of the property
> or financial obligations of the other party beyond the disclosure
> provided.

> B. Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct.

Husband challenges the trial court's finding that the prenuptial agreement was unenforceable pursuant to Code § 20-151(A)(2).

As the party challenging the enforceability of the prenuptial agreement, "[W]ife had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Galloway v. Galloway, 47 Va. App. 83, 91, 622 S.E.2d 267, 271 (2005) (internal quotation marks and citation omitted). However, "[o]n appeal, we review the evidence in the light most favorable to the prevailing party below and determine whether that evidence established as a matter of law any of the grounds wife relied upon to vitiate the agreement." Id. Because wife prevailed on the issue of the enforceability of the prenuptial agreement, we review the evidence in the light most favorable to her regarding the trial court's conclusion that the agreement was unenforceable.

In his brief, husband makes clear that, on cross-error, he "does not contend that [wife] made a written waiver as described in subpart (A)(2)(ii) [of Code § 20-151]. Nor does he challenge the trial court's finding of prerequisite unconscionability at the time of the agreement's execution." Rather, husband's assignment of cross-error is limited to the trial court's finding "that he did not provide [wife] a 'fair and reasonable disclosure' of his 'property or financial obligations . . .' [pursuant to] Code § 20-151(A)(2)(i)."

Determining the level of disclosure required by Code § 20-151(A)(2)(i) presents a question of statutory construction that we review de novo. McGrath v. Dockendorf, 292 Va. 834, 837, 793 S.E.2d 336, 337 (2016). We defer, however, to the trial court's determination of the facts relevant to the application of the standard.

- 10 -

Husband concedes that he failed to disclose more than $500,000 in liabilities to wife before she signed the prenuptial agreement. He argues that this failure is not fatal to the prenuptial agreement because the statute does not require disclosure of all of his property and financial obligations. Rather the statute only requires "fair and reasonable disclosure," which, husband argues, necessarily contemplates something less than disclosure of every piece of property and every financial obligation.

We agree with husband that a party's failure to disclose any particular piece of property or any specific financial obligation is not *ipso-facto* fatal to a prenuptial agreement. Although the General Assembly could have required total and absolute disclosure in Code § 20-151(A)(2)(i), it did not do so. Fairly read, the modifying phrase "fair and reasonable" can be read only as requiring something less than complete disclosure. To hold otherwise effectively would read the modifying phrase out of the statute and leave us concluding that "a fair and reasonable disclosure of the property or financial obligations" has the exact same meaning as "disclosure of the property or financial obligations." This we cannot do. See, e.g., Owens v. DRS Auto. Fantomworks, Inc., 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) (recognizing that the "rules of statutory construction . . . discourage any interpretation of a statute that would render any part of it useless, redundant or absurd . . . [and that] we seek to read statutory language so as to give effect to every word"); Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (holding that "every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary").

Of course, concluding that "fair and reasonable disclosure" requires something less than absolute and total disclosure does not answer the question of whether any particular disclosure is "fair and reasonable." This determination is necessarily a fact-intensive inquiry that will turn on multiple factors, including, but not limited to, the information actually disclosed, the information

not disclosed, whether any information regarding obligations is provided, the totality of the party's financial situation, and the relative size of the non-disclosed information to the totality of the party's financial situation.

Here, we cannot say that the trial court erred in concluding that wife proved that husband's disclosure was not "fair and reasonable." Husband acknowledges that he disclosed to wife that he had property and assets worth approximately $1,800,000, but did not disclose over $500,000 in liabilities. Given that the undisclosed liabilities reduced the value of his property and assets by nearly a third, the trial court's conclusion that wife proved that husband's disclosure was less than "fair and reasonable" is supported by the evidence.[3] Accordingly, we affirm the trial court's determination that the prenuptial agreement was unenforceable pursuant to Code § 20-151(A)(2).

## II. The Trial Court did not Abuse its Discretion by Permitting Husband's Expert Witness to Testify and in Admitting his Report into Evidence.

Wife argues that the trial court abused its discretion by permitting husband's expert witness to testify and admitting his report into evidence. Specifically, she argues that the trial court erred because (1) the expert report was not provided timely, (2) the testimony and report provided by the expert were based on documents that were not provided to wife during

---

[3] Husband, citing isolated statements by the trial court, argues that the trial court applied an erroneous "strict liability" standard rather than determining whether his disclosures were "fair and reasonable."

> [T]he judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts . . . , [and] we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.

Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291(1977). Here, the trial court cited the appropriate statute and expressly quoted the statute's requirement that a disclosure be "fair and reasonable." Accordingly, husband, as the party asserting error on this issue, has not rebutted the presumption that the trial court correctly applied the law.

discovery, and (3) the expert's testimony and report were based on and otherwise contained inadmissible hearsay.

This Court

> reviews a trial court's decision to admit or exclude expert
> testimony under an abuse of discretion standard.  We must give
> deference to a trial court's ruling to exclude or admit expert
> testimony and that ruling will not be disturbed on appeal unless it
> is plainly wrong and amounts to an abuse of discretion.

Condo. Servs. v. First Owner's Ass'n of Forty-Six Hundred Condo., Inc., 281 Va. 561, 575, 709 S.E.2d 163, 172 (2011) (citations omitted).  Similarly, our review of a trial court's decisions regarding the admission or exclusion of non-testimonial evidence is limited to determining whether the trial court abused its discretion.  Lee v. Spoden, 290 Va. 235, 251, 776 S.E.2d 798, 806 (2015).

## A.  Alleged Failure to Timely Produce Expert Report

Wife argues that the trial court abused its discretion by allowing husband's accounting expert, Rosenberg, to testify and by admitting his report into evidence because husband did not provide a copy of Rosenberg's report by the deadline specified in the pretrial scheduling order. We disagree.

As the Supreme Court of Virginia observed, "[b]ecause the timing of the duty to disclose expert opinions can sometimes lead to insufferable arguments over who knew what when and why it took so long to disclose it, courts use pretrial scheduling orders to mark the outer boundaries of the disclosure duties." Mikhaylov v. Sales, 291 Va. 349, 358, 784 S.E.2d 286, 291 (2016).  The trial court entered such an order here; however, neither party fully complied with the order's provisions.  It is undisputed that wife provided husband with an expert report after her deadline had passed, that husband provided wife with an expert report after his deadline had passed, and that counsel for the parties agreed to reciprocal extensions of the deadlines contained

- 13 -

in the order. The trial court was aware of these circumstances when it considered and ultimately denied wife's motion. Given all of this, we cannot say the trial court abused its discretion by allowing Rosenberg to testify, or admitting his report even though husband filed the report after the deadline contained in the order.

### B. Alleged Failure to Produce Documents in Discovery

In this case, wife objected to the expert witness, Rosenberg, testifying because husband did not provide wife with the documents necessary to cross-examine Rosenberg about his report.

From the record, it appears that reams of documents were exchanged by the parties as part of the proceedings in the trial court. The record reveals that, in addition to exchanging documents, husband's counsel offered wife's counsel the opportunity to come to his office so that she could inspect and copy the additional documents.[4]

For whatever reason, no such inspection occurred. Although wife assures us that this was because the offer of inspection was not a "bona fide offer," the record is such that we cannot now come to that conclusion, and, in any event, the trial court did not conclude that any problems with husband's discovery responses merited a sanction. Given the discretion that trial courts enjoy regarding discovery matters, we cannot say on this record that the trial court abused its discretion in declining to sanction husband, by refusing to allow Rosenberg to testify, or by allowing his report to be admitted.[5]

---

[4] Rule 4:9(b)(ii) provides that the response of a party upon whom a request for production of documents has been served "shall state, with respect to each item or category, that inspection and related activities will be permitted . . . ." Accordingly, an offer to allow the documents to be inspected and copied, absent other direction from the trial court, satisfies a responding party's obligation.

[5] Additionally, nowhere in her appellate filings does wife identify with specificity the documents to which she claims she was denied access to in discovery. Accordingly, we cannot conclude that wife was harmed by husband's alleged failure to provide documents.

C. Hearsay as the Basis for Excluding Rosenberg's Opinions

Wife also contends that the trial court abused its discretion by allowing Rosenberg to testify because he based his opinions on inadmissible hearsay and hearsay statements were part of his testimony. Wife further argues that the trial court abused its discretion by admitting Rosenberg's report because the opinions expressed therein were based on hearsay and the report itself contains hearsay statements. We disagree.

Expert opinions, such as the one offered by Rosenberg, when he testified, and those in his report, may be based on otherwise inadmissible information. Code § 8.01-401.1 provides that

> any expert witness may give testimony and render an opinion or draw inferences from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify. The facts, circumstances or data relied upon by such witness in forming an opinion or drawing inferences, if of a type normally relied upon by others in the particular field of expertise in forming opinions and drawing inferences, need not be admissible in evidence.

See also Va. R. Evid. 2:703(a); Commonwealth v. Garrett, 276 Va. 590, 606, 667 S.E.2d 739, 748 (2008) (recognizing that "Code § 8.01-401.1 clearly allows an expert to express an opinion or draw an inference from inadmissible sources, such as hearsay"). Here, wife has not identified any hearsay upon which Rosenberg relied in forming his opinions, whether expressed in his testimony or in his report, that she contends was not "of a type normally relied upon by others in [his] particular field of expertise," accounting. Accordingly, we cannot say that the trial court abused its discretion in allowing Rosenberg's opinions to be entered into evidence, whether through his testimony or in his report.

Code § 8.01-401.1, however, does not allow for the admission on direct examination of the actual hearsay statements underlying an expert's opinions. Commonwealth v. Wynn, 277 Va. 92, 100, 671 S.E.2d 137, 141 (2009). Accordingly, we must consider whether the trial court

abused its discretion in ruling on any hearsay objections that wife timely raised regarding either Rosenberg's testimony or his report.

During trial, wife made certain general objections to Rosenberg basing his expert opinion on hearsay statements; however, the record reveals multiple instances where Rosenberg's testimony contained hearsay and wife did not object. The failure to raise a hearsay objection to otherwise relevant testimony waives the hearsay objection. McCarter v. Commonwealth, 38 Va. App. 502, 509, 566 S.E.2d 868, 871 (2002) (noting that "relevant evidence is admissible, unless a specific rule, *which the defendant raised at trial*, precludes its admission" (emphasis added)).

Furthermore, it is important to recognize that this was not a jury trial. A "trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Pierce v. Commonwealth, 50 Va. App. 609, 616, 652 S.E.2d 785, 789 (2007) (quoting Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992)). "A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." Id. at 617, 421 S.E.2d at 789 (quoting Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981)).

In this case, the trial court specifically stated in its July 8, 2016 order, that: "it considered [Rosenberg's] report for the opinions expressed therein and disregarded any incidental hearsay," and did not consider any hearsay statements for the truth of the matter asserted. The trial court sitting as fact-finder has the unique ability to disregard evidence that is inadmissible and make its determination based on the admissible and probative evidence provided by the expert witness' testimony and his report.

Deference is commanded to a trial court's ruling unless it is plainly wrong. Condo.

Servs., 281 Va. at 575, 709 S.E.2d at 172. Under this deferential standard on review, we cannot

say that the trial court was plainly wrong in evaluating Rosenberg's testimony and considering

his report, because it clearly stated that it disregarded any part that contained inadmissible

evidence. Thus, the trial court did not abuse its discretion by permitting husband's expert

witness to testify and admitting his report into evidence.[6]

### III. The Trial Court did not Abuse its Discretion by Classifying Certain Assets as Husband's Separate Property.

"Equitable distribution involves three distinct decisions: classification, valuation, and

distribution." Hamad v. Hamad, 61 Va. App. 593, 602, 739 S.E.2d 232, 237 (2013). On appeal,

wife challenges the trial court's classification of certain assets, or portions of assets, as husband's

separate property. Specifically, she argues that the trial court erred in its classification of the

brokerage accounts denominated UBS 072 and 073 (which husband testified he opened in 2009),

two ASI notes that were paid down during the marriage, real property located at 229 Serenity

---

[6] Alternatively, the record supports the conclusion that wife waived any objection to Rosenberg testifying or his report being received into evidence. During proceedings on July 9, 2015, husband moved for the admission of all his exhibits, including Rosenberg's report. When he referenced any objections, wife's counsel stated: "I don't think I really have any at this juncture because they're more about the experts . . . . Except that I reserve my voir dires and [right to] cross on the expert report. But other than that I am fine." Based on that representation, the trial court stated: "So all of [husband's] exhibits are admitted into evidence." Four days later, wife objected to the report on hearsay grounds, specifically noting that the objection was that Rosenberg relied a great deal on the statements of [husband] in forming his opinion." The trial court, after noting that the report already had been admitted subject to her being allowed to cross-examine Rosenberg as to its contents, overruled the objection, noting that experts "can rely on hearsay in order to formulate their opinions." Regarding Rosenberg's testimony, the record reflects that when the parties were resolving objections related to the witness and exhibit lists that had been submitted, husband's counsel stated: "I just want the record to be clear then. There is no objection – they're withdrawing their objection – to Mr. Rosenberg, our expert, testifying at hearing?" wife's counsel responded on the record, "That's correct. But not our objection a[s] far" as hearsay.

Lane, and items of personalty, including a 2008 Harley Davidson motorcycle, a 2002 Kawasaki Mule, a Steinway piano, a 2002 Winnebago, and a 2003 Eurovan.

"Property can be classified as marital, separate, or hybrid. Hybrid property involves a mixture of 'part marital property and part separate property.'" Id. (quoting Code § 20-107.3(A)(3)). Per Code § 20-107.3(A)(2), property acquired during the marriage is presumptively marital, and "the party seeking to segregate the separate property bears the burden of proof to equitably trace the truly separate component." Id. If a party fails to carry this burden, "the property remains fully marital." Id.

"On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)). In reviewing the trial court's conclusions, we view the equitable distribution evidence "in the light most favorable to" the party prevailing at trial, granting "all reasonable inferences fairly deducible" from it, Gilman v. Gilman, 32 Va. App. 104, 115, 560 S.E.2d 763, 768 (2000) (quoting Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999)), here, husband.

> Separate property is that acquired by either party (1) "before the marriage," (2) "during the marriage by bequest, devise, descent, survivorship, or gift" from someone other than the other spouse and (3) *"during the marriage in exchange for or from proceeds of sale of separate property," if maintained as separate property*.

Dietz v. Dietz, 17 Va. App. 203, 209, 436 S.E.2d 463, 467 (1993) (emphasis added).

There was extensive testimony regarding the relevant property, how it was acquired, when it was acquired, and the sources of funds used to acquire the property. It is undisputed that the parties' ASI salaries constituted marital property. Husband testified that he oversaw the

payment of the couples' bills and that the parties used the ASI salaries to pay all of their household and living expenses, and, only once the salaries had been exhausted, would they use other funds, such as husband's ASI distributions. Despite the inherent liquidity of money, Rosenberg's opinions were consistent with husband's description. Accordingly, there was evidence presented that the ASI salaries were completely exhausted by the parties' routine living expenses, and therefore, those funds were not used to acquire any of the property at issue on appeal. Given the deferential standard of review, Wiencko, 62 Va. App. at 229-30, 745 S.E.2d at 174, we cannot say the trial court erred in concluding that none of the property in dispute was acquired from the ASI salaries, which were undeniably marital property.[7]

Regarding all of the disputed property, the testimony of both husband and Rosenberg was to the effect that each of them had been acquired either before the marriage or, if acquired after the marriage, had been acquired with husband's separate property. Whether we would have credited this testimony or not is irrelevant, as the trial court did, in fact credit this testimony.

---

[7] Moreover, husband notes that the ASI salaries were deposited in the Sandy Spring Bank checking account, which was husband's account that predated the marriage, and thus, was his separate property. Code § 20-107.3(A)(3)(d) provides that

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

In essence, if funds that are classified as one type of property are commingled with funds in an account that bears a different classification, the commingled funds take on the classification of the receiving account unless retraceable. In this case, marital property, the ASI salaries, was placed in an account that was unquestionably husband's separate property. This resulted in the funds becoming husband's separate property, absent an ability to trace the marital assets and find that they remain in the account. The trial court's decision to credit husband's testimony regarding the use of the ASI salaries makes it impossible to trace the assets in such a matter.

- 19 -

Accordingly, given that there was evidence to support the trial court's conclusion that the various items were acquired with husband's separate property, and the deferential standard of review, we cannot say that the trial court erred in its classification of the property in dispute.

In this case, Rosenberg testified extensively about the status of the property at issue. The trial court, after hearing the evidence and listening to the witness testimony, adopted Rosenberg's analysis and findings. As such, the trial court found that 95.52% of UBS 072 was husband's separate property, and 100% of UBS 073 was husband's separate property. Wife did not offer any expert or lay testimony to rebut husband's expert. In making its determination, the trial court considered facts from Code § 20-107.3(E) at length.

The "trial court determines a witness' credibility, and the weight to give an expert's opinion." Street v. Street, 25 Va. App. 380, 389, 488 S.E.2d 665, 669 (1997). Here, the trial court considered Rosenberg's conclusions and adopted these conclusions to determine which property was separate versus marital. Given this expert testimony, and viewing it in the light most favorable to husband, there was evidence to support the award of the trial court.

IV. The Trial Court did not Abuse its Discretion in Denying Wife's Pretrial Motion to Use an Alternative Valuation Date.

Wife next argues that the trial court abused its discretion when it denied her pretrial motion to use an alternative valuation date for certain assets. We disagree.

"On appeal, we review the court's determination of a valuation date for abuse of discretion." Wright v. Wright, 61 Va. App. 432, 463, 737 S.E.2d 519, 534 (2013) (quoting Thomas v. Thomas, 40 Va. App. 639, 647, 580 S.E.2d 503, 506 (2003)). "We have often recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Id. (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)).

"[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. at 463-64, 737 S.E.2d at 534 (quoting Robbins, 48 Va. App. at 482, 632 S.E.2d at 623).

"The value of the assets determined as near as practicable to the date of trial will usually be the most current and accurate value available." Id. at 463, 737 S.E.2d at 534 (quoting Gaynor v. Hird, 11 Va. App. 588, 593 S.E.2d 788, 790-91 (1991)). "Code § 20-107.3(A) reflects the General Assembly's clear preference that martial property is valued as of the date of the evidentiary hearing in the trial court, unless good cause is shown for an alternate date." Id. However, in Clements v. Clements, 10 Va. App. 580, 397 S.E.2d 257 (1990), this Court stated that using an alternative valuation date may be necessary if a spouse dissipates marital assets after separation. "Dissipation occurs where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Id. at 586, 397 S.E.2d at 261. Accordingly, "[o]nce the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Id.

Prior to the start of trial, wife argued that husband disposed of certain assets. Husband in turn, argued that he would be able to prove, through his expert, that those assets still existed but were converted into another asset. Wife responded that she did not "have any evidence supporting where [the] money went." She further argued that she had good cause to require the trial court to change the valuation date for the equitable distribution of certain property because husband sold the assets. Husband responded that he explained where each of the assets was in his findings of fact and conclusions of law. The trial court denied wife's motion for an alternative valuation date.

- 21 -

Wife failed to carry her burden with the trial court as to why good cause was established for an alternative valuation date. There was no evidence that husband dissipated marital assets other than husband's argument prior to trial that he could and would prove that the assets were still present, but simply in a different form. Thus, the burden never shifted to husband to prove that the money was spent for a proper purpose. Given the evidence at trial, it was within the trial court's discretion to deny wife's motion for an alternative valuation date.

Viewing the evidence under our most deferential standard of review, we cannot say that the trial court abused its discretion in denying wife's pretrial motion for an alternative valuation date. We, thus, affirm the ruling of the trial court.

V. The Trial Court did not Abuse its Discretion in Denying Further Attorney's Fees.

In her final assignment of error, wife argues that the trial court abused its discretion when it failed to award wife attorney's fees. We disagree.

"[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "An abuse of discretion occurs 'only when reasonable jurists could not differ' as to the proper decision." Allen v. Allen, 66 Va. App. 586, 601, 789 S.E.2d 787, 795 (2016) (quoting Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008)).

Code § 20-99(6) provides that "[c]osts may be awarded to either party as equity and justice may require." Trial courts have broad discretion in awarding attorney's fees and costs. See Allen, 66 Va. App. at 601, 789 S.E.2d at 795. "[A]fter considering 'the circumstances of the parties' and 'the equities of the entire case,' a trial court may exercise its discretion and issue an award of attorney's fees and costs that is reasonable 'under all of the circumstances revealed by the record.'" Id. at 601-02, 789 S.E.2d at 795 (quoting Mayer v. Corso-Mayer, 62 Va. App. 713,

734, 753 S.E.2d 263, 273 (2014)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." Id. at 602, 789 S.E.2d at 795 (quoting McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)).

In this case, wife argues that she incurred most of her attorney's fees in setting aside the prenuptial agreement, which required a lengthy hearing and consideration of husband's motion to reconsider, as well as handling husband's failure and refusal to comply with his obligations during discovery. A review of the record reveals that the trial court at least considered the following issues before denying additional attorney's fees: (1) the prior trial on setting aside the prenuptial agreement, (2) the discovery complications and copious amounts of documents in the case, and (3) the "misguided" question of whether husband expended significant personal efforts to enhance the value of his interest in ASI during the marriage. After thoroughly considering the evidence, the trial court found that "[a] lot of the attorney's fees were incurred pursuing other relief that [it did not] think was really warranted." So finding, the trial court denied the motion for attorney's fees, over and above the $30,000 that wife had previously been awarded.

As such, based on the facts and circumstances of this case, it appears that the trial court considered all of the relevant circumstances of the parties prior to making its decision to deny further attorney's fees. Accordingly, this Court cannot say that the trial court abused its discretion. We, therefore, affirm the trial court's denial of further attorney's fees.

VI. Attorney's Fees and Costs on Appeal

Both parties seek an award of attorney's fees and costs on appeal. We deny both requests.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  Upon consideration of the entire record on appeal, we hold that neither party's position was so unreasonable as to entitle the other party to an award of attorney's fees incurred in this appeal. See Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004) ("We find the litigation addressed appropriate and substantial issues and that [husband did not] generate[] unnecessary delay or expense in pursuit of [his] interests.").  We also do not think any reason exists for either party to require additional payment for preparation of this appeal.  For these reasons, we deny both parties' requests for an award of attorney's fees and costs on appeal.

CONCLUSION

In resolution of the various issues presented on appeal and cross-error we hold as follows: (1) that on husband's assignment of cross-error, the trial court did not err in overruling husband's plea in bar and in concluding that the parties' prenuptial agreement was unenforceable; (2) that the trial court did not abuse its discretion by permitting husband's expert witness to testify at trial and in admitting his report into evidence; (3) that the trial court did not abuse its discretion by classifying certain assets as husband's separate property; (4) that the trial court did not abuse its discretion when it denied wife's pretrial motion to use an alternative valuation date for some of the marital assets; and (5) that the trial court did not err in in its decision to not award further attorney's fees to wife.

Finally, we direct the parties to bear their own fees and costs on this appeal.

Affirmed.