**Alexandria**

SYLVIA JEAN CLEMENTS

v.

DOUGLAS M. CLEMENTS

No. 1182-88-4

and

DOUGLAS M. CLEMENTS

v.

SYLVIA JEAN CLEMENTS

No. 1227-88-4

Decided July 17, 1990

COUNSEL

E. Thompson Magoffin for Sylvia Jean Clements.

Sharon K. Lieblich for Douglas M. Clements.

Opinion

**KEENAN, J.**—Sylvia J. Clements (wife) and Douglas M. Clements (husband) both appeal from a decree in which the trial court awarded the husband a divorce on the grounds of adultery. The final decree provided for a $50,000 monetary award to the wife.

The wife raises three issues on appeal: (1) whether the trial court erred in its valuation of the marital share of the husband's pension and the subsequent distribution thereof; (2) whether the trial court improperly failed to include certain assets of the parties as marital property and divide them accordingly;[1] and (3) whether the court erred by using a valuation date other than the date of the final decree for Merrill Lynch account #795-22467.

The husband raises three issues on appeal: (1) whether the trial court's arithmetic calculation of the parties' assets failed to give full effect to a stipulation agreement between them; (2) whether the trial court erred by failing to impose sanctions against the wife for removing funds contrary to the stipulation agreement; and (3) whether the monetary award was proper.

The facts pertinent to this appeal are as follows. Sylvia and Douglas Clements were married in March 1959. They had two children, both of whom are currently emancipated. The parties separated on August 17, 1984 and a final decree of divorce was entered on August 4, 1988.

Douglas entered the military in 1957 and retired in June 1979. He then worked for two months in Saudi Arabia, before returning to the U.S., where he held various jobs. He returned to Saudi Arabia with the Peace Support Group in 1981 and remained there for thirty-eight months. During this time, Sylvia lived in the marital home in Vienna, Virginia except for two months in 1983 when she was in Saudi Arabia.

---

[1] In her appeal, the wife claims that the trial court did not consider the husband's GOSI insurance, Peace Support Group bonus, and Merrill Lynch account #795-24910 as marital property. She raises the issue in the husband's appeal as well, again claiming that the trial court did not consider the Peace Support Group bonus. In that appeal, she also claims that the trial court failed to include as marital property Saudi settlement money received by the husband prior to the parties' separation and funds received by the husband from various bank accounts.

In addition to the marital home and its furnishings, the parties owned two automobiles and had substantial liquid assets which were maintained primarily in Merrill Lynch investment accounts. After their separation, the parties agreed to the following distribution of assets by stipulation entered September 5, 1986: (1) Wife was to keep $32,000 worth of assets currently in her control; (2) Husband was to receive an equivalent amount; and (3) other specified liquid assets were to be frozen.

An equitable distribution hearing was held October 15-16, 1986. At that time the parties stipulated to the distribution of the marital home and its furnishings except for one dining room set, jewelry and the automobiles. By letter order dated December 10, 1987 the court ruled on the distribution of the remaining property. This ruling was clarified in a second letter of May 9, 1988. The parties noted cross-appeals with respect to the court's findings.

Initially, the wife argues that the trial court erred both in the dollar valuation it placed on the husband's pension and in the percentage of the pension designated as the marital share. In addition, the wife argues that the trial court erred in not awarding her one-half of payments received by the husband from his pension between the date of separation and the date of the final decree of divorce.

In its letter opinion of December 1987, the trial court valued the husband's pension at $238,274. The court determined that ten percent of the pension ($23,827) was the husband's separate property, since the parties were not married during his entire military career. Thus, the court determined that the value of the marital share of the pension was $214,447 or ninety percent.[2] The wife argues that the trial court's valuation does not accurately reflect the value of the husband's pension because it does not include cost of living adjustments. The wife maintains that the proper value of the pension is $425,696.[3] She also claims that pension payments have been made to the husband in excess of $92,637 since the parties separated and that she is entitled to one-half the amount he received between the date of separation and the date of the

---

[2] This is the valuation offered to the court by the husband's expert. The date of valuation was September 1986.

[3] This is the valuation offered into evidence by the wife's expert with a valuation date of August 1984.

final decree.

The trial court heard testimony from both the husband's expert and the wife's expert with respect to the methods they utilized to compute the pension value and the factors that they considered in making their computations. The husband's expert testified that his valuation method took into consideration both inflation and cost of living. Assuming, without deciding, that the trial court was required to include a cost of living adjustment, we find that the record before us demonstrates that both valuations included a cost of living adjustment. The trial court did not err in choosing one expert valuation instead of another. *See Reid v. Reid,* 7 Va. App. 553, 563, 375 S.E.2d 533, 539 (1989).

Both experts agreed that the marital share of the pension was ninety percent and no alternative valuation was offered until after the trial court initially ruled on the distribution of the pension assets. The wife presented additional evidence as to the actual valuation of the pension after the trial court determined the issue. We find that the trial court did not abuse its discretion by refusing to reconsider the value of the marital share of the husband's pension based on information presented after the evidentiary hearing. *See Morris v. Morris,* 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986).

At the time the bill of complaint was filed, Code § 20-107.3 did not fix the date of valuation for marital property.[4] However, the trial court was instructed to consider the present value of a pension in determining a monetary award. Code § 20-107.3(E)(8). In addition, a panel of this court determined that the preferred date for valuation of marital assets is a date as near as practicable to the date of the evidentiary hearing. *Mitchell v. Mitchell,* 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987). The trial court determined the value of the pension in September 1986; under the circumstances of this case, valuation on that date is consistent with our holding in *Mitchell.* Thus, we hold that the trial court did not err in valuing the pension at $214,447 when making its monetary award to Mrs. Clements.

---

[4] Code § 20-107.3 was amended in 1988 to fix the date of the evidentiary hearing as the date of valuation unless either party moves the court to use a different date and the court agrees for good cause shown.

■ We also find that the trial court did not abuse its discretion by ruling that the wife was not entitled to one-half of the pension payments received by the husband between the date of the parties' separation and the date of the final decree. There is no presumption in Virginia favoring equal division of marital property. *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986). Rather, the court is authorized to make a monetary award to either party based on the equities and rights and interests of each party in the marital property. *Venable v. Venable*, 2 Va. App. 178, 185, 342 S.E.2d 646, 650 (1986).

In response to the wife's motion for reconsideration, in which she specifically raised the issue of pension payments received by the husband, the trial judge stated that he chose to keep the pension intact, utilizing a valuation offered at the evidentiary hearing, and award the wife liquid assets and a monetary award. We find no abuse of discretion in the trial court's decision to consider the total value of the husband's pension in determining the appropriate monetary award. Moreover, any pension monies paid to Mr. Clements after the evidentiary hearing were necessarily presumed by the trial court to be included in the total present value affixed to the pension. Accordingly, the trial court's refusal to award Mrs. Clements half of the pension monies received by Mr. Clements between the date of separation and the date of the final decree was not error. The court's division of the husband's pension and the corresponding monetary award to the wife constituted a single distribution of that marital asset, consistent with Code § 20-107.3. *Cf. Brinkley v. Brinkley*, 5 Va. App. 132, 137, 361 S.E.2d 139, 142 (1987)(decree granting monetary award plus percentage of pension benefits defective because it gives one party two monetary awards).

■ With respect to the wife's claims regarding the distribution of certain marital assets, we find no error in the trial court's determination that there was no property to be distributed from either the GOSI insurance or the Peace Support Group bonus. The trial court determined that the husband did not work in Saudi Arabia long enough to qualify for the GOSI insurance and that the wife did not provide sufficient evidence for the court to determine that the husband was entitled to these funds. Likewise, the trial court stated that it was unable to determine from the joint submission of the parties exactly what funds the wife was seeking to have

distributed from the Peace Support Group bonus. Although the wife presented evidence of an employment contract entitling the husband to a bonus, no evidence was produced at trial that the husband actually received this bonus or that the funds were available for distribution. "Reviewing courts cannot continue to reverse and remand . . . [equitable distribution] cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so." *Bowers v. Bowers*, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). We find that the wife failed to prove that the GOSI insurance or Peace Support Group bonus existed; thus, we hold that the trial court did not err in failing to consider them as property subject to distribution.

The trial court also determined that at the time of the evidentiary hearing, there were no funds to be distributed from the accounts referred to by the wife at the Maryland State Bank, First Virginia Bank, and Kelly Field National Bank. Viewing the evidence before the court in the light most favorable to Mr. Clements, who was the prevailing party on this issue in the trial court, *see Martin v. Pittsylvania County Dep't of Social Servs.*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986), we hold that the trial court's finding regarding the value of these bank accounts at the time of the evidentiary hearing was not plainly wrong. Code §8.01-680.

However, our inquiry does not end with that determination, since the record reflects that all these accounts had value at or near the date of separation. While it is generally held that only property owned by the parties at the time of the last separation is classified as marital property, in the case of assets wasted in anticipation of separation or divorce, equity can only be accomplished if the party who last had the funds is held accountable for them. *Booth v. Booth*, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988). Dissipation occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *Hellwig v. Hellwig*, 100 Ill. App. 3d 452, 426 N.E.2d 1087 (1981). Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose. *See, e.g., In re Marriage of Smith*, 128 Ill. App. 3d 1017, 471 N.E.2d 1008 (1984); *Manaker v. Manaker*, 11 Conn. App. 653, 528 A.2d 1170 (1987); *In re*

*Marriage of Merry*, 689 P.2d 1250 (Mont. 1984). However, a majority of courts have held that the use of funds for living expenses while the parties are separated does not constitute dissipation. *See, e.g., In re Marriage of Randall*, 157 Ill. App. 3d 892, 510 N.E.2d 1153 (1987); *Green v. Green*, 64 Md. App. 122, 494 A.2d 721 (1985); *Volesky v. Volesky*, 412 N.W.2d 750 (Minn. Ct. App. 1987); *Layton v. Layton*, 687 S.W.2d 214 (Mo. Ct. App. 1984).

We agree with the majority view and hold that the burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose. If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result.

In the case before us, the trial court specifically stated that it was satisfied with the explanations offered by the husband that the money contained in these accounts was used primarily for household and tuition expenses. A review of the record reveals that with respect to the Maryland State Bank, the husband testified that the $2500 CD claimed by the wife was used initially as collateral for his son's college tuition and then for the tuition itself. No other evidence was before the court as to the existence of this account or its value. With respect to the First Virginia Bank, the account had a balance of $308 on August 17, 1984, the date of the parties' separation. In addition the husband removed $910 during the month preceding August 17, 1984, and the wife withdrew $400 during that period. According to the parties' stipulation, the account was closed by the husband in August 1984 and no additional evidence was presented as to its value or use of the funds. With respect to the Kelly Field National Bank, the record reflects that at least $13,700 worth of checks drawn on that account were deposited into the husband's Merrill Lynch Account #795-24910 prior to the date of separation. As of August 6, 1984, the account had a balance of $3,103.60. Funds totalling $1,674.30 were deposited between August 6 and September 6. However, on September 6, 1984 the account reflected a zero balance and was subsequently closed. An account statement indicates that five checks were drawn on the account between August 6 and September 6 but no evidence was presented as to the use of the funds.

On this record, we find that the trial court's finding as to the Maryland State Bank funds was supported by the evidence, but the findings regarding the First Virginia and Kelly Field monies were plainly wrong. Absent evidence that the $1,218 taken by the husband from First Virginia and the $4,777.90 taken from Kelly Field were not dissipated, the trial court erred by not considering these funds as marital property subject to distribution.

The trial court specifically stated that it was satisfied with the explanations offered by the husband that the money contained in these accounts was used primarily for household and tuition expenses, a finding which, except for the monies deposited in Merrill Lynch account #795-24910 is supported by the checks themselves. In addition, there was no evidence presented to the court that there were funds available in any of these accounts on the date of the evidentiary hearing. Although the court may utilize a valuation date other than the date of the evidentiary hearing when the equities of the case demand it, *see Price v. Price*, 4 Va. App. 224, 232, 355 S.E.2d 905, 910 (1987), on this record, we find no abuse of discretion in the trial court's decision to value these accounts at the time of the evidentiary hearing.

The wife makes the same argument with respect to both Merrill Lynch account #795-24910, and $19,066.46 paid to the husband as Saudi settlement money. The record shows that in addition to the $13,700 deposited by the husband into the Merrill Lynch account from the Kelly Field account, the husband also deposited $12,278 of the claimed Saudi settlement money into this account: $6,416.66 received as a service award, $361.37 received as in-country pay, and $5,500 in wages from June 1984.[5] The husband then withdrew $13,493 from this account on July 31, 1984, $2,855 on August 14, 1984, $5,000 on August 21, 1984 and $3,000 on August 31, 1984. The parties' joint submission indicates that this money was used to purchase a car and to provide for the husband's living expenses and legal fees once the parties separated. In an account statement dated August 31, 1984, the account was shown to have a closing balance of $2,048.75. No additional evidence was presented to the court as to the value of this account.

Nevertheless, the court did not make specific findings with respect to the husband's disposition of the funds in this Merrill

---

[5] No evidence was presented as to the disposition of the remaining $6,788.46.

Lynch account or the remaining $6,788.46 received by the husband in June as part of his Saudi settlement money. Instead the court merely stated that there was no evidence that the Merrill Lynch account had any value at the time of the evidentiary hearing.

For the reason stated above, we remand this issue to the trial court for its finding as to whether these assets were dissipated by the husband, and if so, the resulting effect on the court's distribution of property.

Finally, the wife argues that the court erred in using a February 1985 valuation date for Merrill Lynch account #795-22467, since the final decree was not entered until August 1988. According to the joint submission of the parties, the value of this account on September 26, 1986 was $50,424. The evidentiary hearing was held in October 1986. The court in the balance sheet attached to its letter opinion valued the account at $50,424. Although the letter attached to the joint submission is dated February 5, 1985, and the trial court in its letter opinion stated that it was valuing the property as of February 1985, the record contains ample evidence that this account was worth approximately $50,424 on September 26, 1986. Since the value the court applied to this account was the value of the account in September 1986, we find that the court properly valued the account at a date as near as possible to the date of the evidentiary hearing. *See Mitchell*, 4 Va. App. at 118, 355 S.E.2d at 21.

The husband, in his appeal, argues that the trial court did not properly credit property received by the parties pursuant to a pretrial stipulation. We agree and accordingly remand this case to the trial court for reconsideration of its award in light of this decision.

The trial court, in the balance sheet attached to its December 1987 opinion letter, credited $30,000 to the husband, which was awarded to him pursuant to the 1984 stipulation. These funds were originally in Merrill Lynch account #795-83260 and were transferred to a separate account bearing the number 795-26409.[6] The wife also was entitled to $32,000 pursuant to the September stipulation and the parties agree that she received at least $31,250

---

[6]   Husband admits that he actually received $32,682.

after the September stipulation, which was transferred from Merrill Lynch account #795-22467 to a separate account bearing the number 795-26713.[7] The trial judge did not credit the wife with the actual amount received, but only with $17,158, the amount remaining in account #795-26713 in August 1985.[8] Consequently, it is not clear that the trial court properly considered the value of all the property of the parties in its determination of the monetary award made to Mrs. Clements. *See Rexrode v. Rexrode,* 1 Va. App. 385, 395, 339 S.E.2d 544, 550 (1986); *Robinette v. Robinette,* 4 Va. App. 123, 130, 354 S.E.2d 808, 811 (1987). Accordingly, we also remand this issue to the trial court for further consideration.

Notwithstanding our decision to remand this case, we nevertheless find that there was no abuse of discretion on this record in the trial court's failure to impose sanctions against the wife for removing monies from account #795-22467 in excess of the stipulated amounts. The husband concedes that the majority of the funds at issue were removed prior to the entry of the stipulation agreement. In addition, the trial court heard testimony as to the parties' understandings with respect to the monies received by each. Finally, the court noted that it was difficult to trace funds flowing in and out of this account. Although we find no abuse of discretion appearing in the record before us regarding the trial court's determination that the funds remaining in account #795-22467 were subject to distribution in accordance with the factors set forth in Code §20-107.3, and that sanctions against the wife were not appropriate, the trial court on remand may reconsider whether sanctions are appropriate if it determines that the wife removed the $10,694 from account #795-22467 in contravention of the parties' stipulation.

Because we remand this case for a reconsideration of the monetary award in light of our findings herein, we do not address the

---

[7] It is undisputed that Mrs. Clements also received approximately $10,694 from account #795-22467 in August 1984, prior to the entry of the stipulation agreement. There is considerable dispute between the parties, however, as to whether these funds were taken with the husband's consent to pay for household expenses, or whether they were removed without his knowledge and contrary to the intent of the subsequent stipulation. Resolution of this dispute is not necessary for our analysis here since it is clear that the trial court did not credit on its balance sheet even the undisputed amount received by Mrs. Clements.

[8] The joint submission did not contain a value for this account. The court determined its value from Mrs. Clements' answers to interrogatories submitted in August 1985.

husband's argument whether the amount of the monetary award was proper.

For the reasons stated, this case is affirmed in part, reversed in part and remanded to the trial court for further consideration consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Coleman, J., and Duff, J., concurred.