**Alexandria**

H.W. AMBURN, II

v.

CHRISTINE E. AMBURN

No. 1622-90-4

Decided February 25, 1992

COUNSEL

J. Herbie DiFonzo, for appellant.

Robert E. Shoun (Shoun, Smith & Bach, on brief), for appellee.

OPINION

DUFF, J.—H. W. Amburn, II (husband), appeals from a September 6, 1990 equitable distribution ruling of the Fairfax County Circuit Court, in which the trial court awarded Christine Amburn (wife) fifty percent of husband's interest in the Thomson Instrument Company and determined that a large post-separation credit expenditure by the wife should be treated as a joint marital obligation. Husband also appeals the trial court's refusal to award him a return of his $80,000 down payment on the marital home. Because we find no abuse of discretion by the trial court, we affirm.

Christine and H. W. Amburn, II, were married on January 6, 1978. Seven months before the marriage, Mr. Amburn became a partner in Thomson Instrument Company (TIC), a small, entrepreneurial enterprise that grew significantly over the course of the parties' marriage. Mr. Amburn is the President of TIC and has managerial responsibility for its day-to-day operations. In 1979, Mrs. Amburn left her full-time employment to work for TIC, beginning as a part-time clerical worker and later becoming the full-time office manager. Her employment continued until three months after the parties' separation.

At trial, the parties stipulated that the value of husband's interest in TIC was $90,000. The trial judge determined that the wife was entitled to one-half this amount, and therefore directed husband to pay her the sum of $45,000.

In 1980, the parties purchased a marital residence for $143,900, using an $80,000 down payment made from husband's separate funds. At trial, the residence was stipulated to be worth $275,000. The home had a first deed of trust principal balance of approximately $59,520, dating from the original purchase, and a second trust principal balance of $86,972. The second trust obligation arose when the wife activated a Sovran Bank home equity credit line that the parties had established prior to their separation. At trial, Mr. Amburn testified that a major reason the credit line had been established was to assure the availability of funds for the education of Francine Poel, his stepdaughter. Mrs. Amburn activated this credit line several months after the marital separation by unilaterally withdrawing $95,000, which she placed in a personal account at Chevy Chase Savings & Loan. The wife then utilized $86,972 of this amount for a variety of expenses during the next twenty-one months, including payments for Francine Poel's college costs.

The trial court ruled that the husband was entitled to sixty percent of the proceeds of the marital residence, while the wife was entitled to forty percent. The trial court allowed no reimbursement to the husband for his initial down payment on the residence, nor did it deduct the wife's $95,000 credit withdrawal from her share of the marital estate.

## I. THOMSON INSTRUMENT COMPANY

In June, 1977, husband acquired a fifty percent interest in TIC. The parties married seven months later. During the marriage, the company's value increased substantially. Gross sales, for example, increased from $368,000 in 1977 to approximately $2.6 million in 1989. At trial, the husband's interest was stipulated to be worth $90,000. Husband contends that the trial court erred in awarding one-half his interest in TIC to his wife. We disagree.

■ "The trial court's findings must be accorded great deference. Its judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Keyser v. Keyser*, 7 Va. App. 405, 409, 374 S.E.2d 698, 701 (1988)(citing Code § 8.01-680). Here, we cannot determine that the trial court was "plainly wrong." TIC began as a small company which grew substantially over the course of the marriage. Much of this growth can be traced to the efforts of the husband and wife, both of whom con-

tributed much time and energy to TIC over the years. Although husband held the position of president, while his wife was office manager, it is not clear that the trial court abused its discretion by finding that the wife expended labor in the appreciation of the company's value. Both parties worked full-time for TIC during a large portion of the marriage. Under the circumstances, an award to wife of one-half husband's interest was well within the fact finder's discretion. We will not substitute our own judgment for that of the trial court.

## II. THE MARITAL RESIDENCE

The second asset at issue in this appeal is the division of the marital residence, which the parties purchased in 1980 for $143,900. In making the joint purchase, the husband contributed the $80,000 down payment from his separate funds. On appeal, he asserts that he should be reimbursed for this initial expenditure.

■ It is undisputed that the home was purchased jointly in the names of both parties. Thus, the residence is presumed to be marital property. Code § 20-107.3(A)(2)(i). The parties then resided in this home for the duration of the marriage, making regular mortgage payments. The salary drawn by the husband during the marriage was unquestionably marital property. *See Stainback v. Stainback*, 11 Va. App. 13, 24, 396 S.E.2d 686, 693 (1990). In fashioning an award, the trial court must consider each party's contributions to the acquisition of marital property. Code § 20-107.3(E)(2). However, no evidence in the record establishes that the court failed to consider the husband's contributions in this case. In fact, the trial court awarded a larger percentage of the home's value to the husband than to the wife. This award strengthens a conclusion that the court considered the various factors and recognized the husband's greater monetary contribution toward the acquisition of that property. Therefore, we find no abuse of discretion in the trial court's ruling regarding the classification and disposition of the marital residence.

## III. POST-SEPARATION EXPENDITURE OF CREDIT

In July, 1987, husband and wife established a joint line of credit on the marital home. The parties then separated on September 17, 1987, according to an interim separation agreement. This agreement included clauses providing for interim spousal support and specifying that the husband would pay all college tui-

tion fees and living expenses for his stepdaughter, Francine Marie Poel. The agreement specifically reserved the possibility of future alimony payments and noted that final equitable distribution would be determined by future proceedings or by subsequent agreement.

In March, 1988, wife withdrew $95,000 from the home equity credit line. Wife had first sought a $20,000 cash advance. When the husband refused to grant this request, wife activated the line of credit. The trial court viewed the resulting debt as a lien on the marital residence, to be paid by both parties. Husband contends that the wife alone should be held responsible for this amount.

Husband's argument is based on evidence that the wife had originally expected the withdrawal to constitute an advance on her equitable share. However, the trial judge emphasized that he discounted this evidence because the parties subsequently entered into a written consent decree, entered by the court on December 30, 1988. This decree incorporated the interim separation agreement by reference, and added several key clauses pertaining to the wife's withdrawal of the funds from the joint line of credit. For example, the consent decree specified that the husband had failed to meet his obligation to pay the daughter's college expenses out of his separate funds, pursuant to the interim agreement. Instead, the wife had paid those costs using funds borrowed from the joint credit line. Furthermore, the consent decree stated that interest on these funds had already accrued and would continue to accrue, and that this interest also was being paid by Mrs. Amburn. The consent decree concluded by stipulating that the wife provide a full accounting for her use of any funds withdrawn from the joint line of credit. A final determination of equitable distribution regarding those funds as well as other marital assets was reserved for future proceedings.

Here, husband and wife never reached an agreement concerning any advance on the wife's equitable share. Rather, they entered into a consent decree specifying that the wife was required to account for her use of the funds she withdrew from the joint credit line. As the trial court determined, "the fact that [the wife] was supposed to keep an accounting gives some credence to the fact that [the parties] understood at the time of entering the consent decree . . . that it was to be treated as if it [were] any other fund that one party spends[,] and we will see whether they dissipated it

or not."

■ This Court recently held that "[d]issipation occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.' " *Clements v. Clements*, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990) (quoting *Hellwig v. Hellwig*, 100 Ill. App. 3d 452, 55 Ill. Dec. 762, 426 N.E.2d 1087 (1981)). The *Clements* court went on to note that "a majority of courts have held that the use of funds for living expenses while the parties are separated does not constitute dissipation," *Clements*, 10 Va. App. at 587, 397 S.E.2d at 261, and then held that "the burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose." *Id.*

This is not a case involving a deliberate waste of marital assets. Mr. Amburn's own actions in breach of the interim separation agreement led to his wife's need to draw funds for her daughter's education. Mrs. Amburn presented a full accounting of her use of the line of credit, and the trial court reasonably found that she did not squander the money or use it for improper purposes. The money was spent over the course of twenty-one months, primarily for the daughter's education, the wife's personal living expenses, attorney's fees for the divorce proceedings and required payments on the loan.

■ "We emphasize that the division or transfer of marital property and the amount of any monetary award is a matter committed to the sound discretion of the trial court." *Zipf v. Zipf*, 8 Va. App. 387, 393 n.2, 382 S.E.2d 263, 266 n.2 (1989). Here, the trial court carefully considered all aspects involved in order to fashion an equitable distribution of the marital property. For example, Mrs. Amburn requested no spousal support at trial, despite her earlier reservation of such a claim in the separation agreement. Additionally, the trial court chose to award sixty percent of the home's equity to Mr. Amburn, while awarding forty percent to Mrs. Amburn. The trial court had all the evidence before it and was required to balance a large number of factors in making the determination. We must give due deference to that decision.

We hold that the evidence supports the trial court's determination that the parties did not agree to a specific disposition of the

debt caused by the joint line of credit. This case involved no surreptitious squandering of marital assets. The wife presented a full accounting of her expenditures from the joint credit line, as required by the December 30, 1988, consent decree. The trial court held that "in the absence of agreement, the question is waste and there wasn't any [here]. . . ." The trial judge considered all the evidence and found that no dissipation had occurred. This decision was supported by the evidence and will not be disturbed on appeal.

Accordingly, the ruling of the trial court is affirmed in all respects.

*Affirmed.*

Moon, J., and Bray, J., concurred.