UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Malveaux and Senior Judge Clements
Argued by teleconference

SYLVIA D. ROSS

MEMORANDUM OPINION[*] BY
v.      Record No. 2024-19-4      JUDGE MARY BENNETT MALVEAUX
JULY 28, 2020

DONALD M. ROSS

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Richard F. MacDowell, Jr. (MacDowell Law Group, P.C., on briefs),
for appellant.

Carole A. Rubin (Ilona Ely Grenadier; Grenadier, Duffett, Levi,
Winkler & Rubin, P.C., on brief), for appellee.

In 2017, the circuit court entered a final decree divorcing Sylvia D. Ross ("wife") and

Donald M. Ross ("husband"). Wife appealed, claiming error in various aspects of the circuit court's

determinations regarding equitable distribution and spousal support. We affirmed in part and

reversed in part. Ross v. Ross, No. 0748-17-4 (Va. Ct. App. Dec. 19, 2017). The circuit court on

remand made additional findings, which wife now appeals. Specifically, wife argues that the circuit

court erred in not considering all of the statutory factors in setting the duration and amount of her

spousal support award. Further, she contends that the circuit court erred in denying her motion for

an alternate valuation date for the parties' joint bank accounts and in calculating the marital portion

of a specific bank account. For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

Husband and wife were married on October 16, 1993. The parties separated on November 16, 2015. On December 22, 2015, wife filed a complaint for divorce.[1] Prior to trial, on November 10, 2016, wife filed a motion for an alternate valuation date for the parties' marital bank accounts.

A two-day trial was held on December 6 and 7, 2016. On February 17, 2017, the circuit court issued a letter opinion granting the parties a divorce based on their having lived separate and apart in excess of one year, and a final decree of divorce incorporating its rulings was entered on March 3, 2017.

In its decree, the court awarded wife spousal support of $5,000 per month for four years with a reservation of spousal support for ten years.

In its equitable distribution award, the court valued the parties' checking and savings accounts as the amount contained at the date of trial. In relation to wife's motion for an alternate valuation date, the court found that although husband withdrew approximately $44,000 from joint accounts at the time of the parties' separation, there was some evidence that he used these funds to pay certain marital bills, the taxes on the marital home, and to pay for and furnish his rental home and that neither party presented evidence sufficient for the court to determine how these funds were used. In addition, the court classified husband's Navy Federal Credit Union account ending in 4078 ("NFCU-4078 account") as husband's separate property. The court found that "[t]he parties stipulated that this account is [husband's] separate property and that it had a value of $16,758 at the time of the [evidentiary] hearing."

---

[1] The parties had two children during the marriage, and both were over eighteen when wife filed her complaint for divorce.

On March 15, 2017, wife filed a motion for reconsideration, arguing in part that the court erred in awarding her a time-limited, four-year award of spousal support as this award was not equitable under the circumstances. Wife also argued that the court erred in not granting her motion for an alternate valuation date.

On March 22, 2017, the circuit court issued a letter opinion regarding the motion for reconsideration and entered an amended final decree of divorce reflecting these rulings on April 7, 2017. In its ruling, the court extended wife's spousal support award to five years with an eleven-year reservation. The court denied wife's motion for an alternate valuation date, rejecting wife's argument that the marital funds that husband had removed from the parties' joint bank accounts constituted waste.

On May 8, 2017, wife appealed the final decree of divorce to this Court.

On appeal to this Court, wife argued that the circuit court erred in failing to make sufficient findings to support the amount and defined duration of the spousal support award. Our Court agreed, finding that the circuit court had "not identified the findings that provide 'the basis for the nature, amount, and duration of the award' as required for periodic support payments of a defined duration." Ross, No. 0748-17-4, at *5 (quoting Code § 20-107.1(F)). Therefore, this Court held that because "[t]he written findings by the [circuit] court . . . do not sufficiently state on the record the basis for its assumption that spousal support will no longer be appropriate after five years[,] we consequently cannot review the correctness of the assumption." Id. at *6. Our Court instructed that on remand the circuit court "may provide additional written findings pursuant to Code § 20-107.1(F) to identify the factors which support its award of

defined-duration spousal support or it may reconsider its award" and do so "based on the existing record."[2] Id.

Wife also argued on appeal to this Court that the circuit court erred in classifying the contents of the NFCU-4078 account as husband's separate property. Wife asserted that either the original $44,000 or the balance of $16,758 remaining in the NFCU-4078 account on the date of trial should have been classified as marital property. In the alternative, wife contended that the circuit court erred in denying her motion for an alternate valuation date of the accounts from which the funds were withdrawn, asserting that husband had wasted the $44,000 of marital funds withdrawn from the joint accounts and deposited into the NFCU-4078 account. This Court held that "the [circuit] court's finding that the parties had stipulated that the NFCU[-4078] account was husband's separate property is without evidence in the record to support it." Id. at *8. We therefore "remand[ed] to the [circuit] court for a determination pursuant to Code § 20-107.3 of the classification of the account and, if necessary, the equitable distribution of the account funds in light of the factors in Code § 20-107.3(E)." Id. We further remanded on the issue of whether an alternate valuation date was warranted based on husband's purported waste of the funds, noting that we remanded "[b]ecause the classification of assets as marital or separate is an integral part of the determination of dissipation, and the [circuit] court did not classify the account into which the funds were deposited." Id. at *8-9 n.7.

On December 10, 2018, the circuit court issued a letter opinion addressing the issues presented in this Court's remand order, and an order incorporating its rulings was entered on January 4, 2019. On January 22, 2019, wife filed a motion for reconsideration of these rulings,

---

[2] The Court also noted that it "express[ed] no opinion as to whether the evidence presented would support a defined-duration award pursuant to Code § 20-107.1(F)" and "determine[d] today only that the findings made by the [circuit] court in the record before us were not sufficient to support a defined-duration award." Id. at *6 n.3.

again arguing that the court's rulings regarding spousal support and the motion for alternate valuation had been made in error. On January 25, 2019, the circuit court entered an order that stayed and suspended its remand order. On November 14, 2019, the court issued another letter opinion and final order in regard to the remand order. In this ruling, the circuit court again awarded wife $5,000 a month in spousal support for a defined duration of five years with an eleven-year reservation. The court also classified the NFCU-4078 account as hybrid, found the alternative valuation date of December 21, 2015 appropriate to achieve an equitable result, and found that the account contained $24,627.54 of marital money to be divided as of that date.

Wife now appeals the circuit court's November 14, 2019 final order.

## II. ANALYSIS

### A. Spousal Support

Wife argues that the circuit court erred in failing to consider all statutory factors in its spousal support award in regard to both the duration and amount of spousal support.[3]

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Northcutt v. Northcutt, 39 Va. App. 192, 196 (2002) (quoting Barker v. Barker, 27 Va. App. 519, 527 (1998)). "A trial court's decision 'on this subject will not be reversed unless there has been a clear abuse of discretion.'" Brandau v. Brandau, 52 Va. App. 632, 641 (2008) (quoting Congdon v. Congdon, 40 Va. App. 258, 262 (2003)). "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Id. (quoting Robbins v. Robbins, 48 Va. App. 466, 482 (2006)). In addition, "[w]hen a court awards spousal support based upon due consideration of the factors enumerated in Code [§] 20-107.1, as shown by the evidence, its determination 'will not be disturbed except for a clear abuse of discretion.'" Dodge v. Dodge, 2 Va. App. 238, 246 (1986) (quoting

---

[3] This section of the opinion addresses wife's first and second assignments of error.

Thomasson v. Thomasson, 225 Va. 394, 398 (1983)).  "An abuse of discretion . . . exists if the trial court fails to consider the statutory factors required to be part of the decisionmaking process."  Congdon, 40 Va. App. at 262.

Wife, as the party who sought spousal support, bore the burden in the circuit court "of proving all facts necessary for an award."  Robbins, 48 Va. App. at 484.  Further, this Court views the evidence in the light most favorable to husband, as the prevailing party below, "granting h[im] the benefit of any reasonable inferences" flowing from the evidence.  Robinson v. Robinson, 54 Va. App. 87, 92 (2009).

Code § 20-107.1(C) states that "[t]he court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof."  The statute enumerates thirteen specific factors the court must consider when awarding spousal support.  Code § 20-107.1(E)(1)-(13).[4]  "In determining spousal support, the . . . court must consider all factors contained in Code § 20-107.1; failure to do so constitutes reversible error."  Rowe v. Rowe, 24 Va. App. 123, 139 (1997).  Code § 20-107.1(F) further requires that "[i]f the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award."

---

[4] Specifically, the court "shall consider the circumstances and factors which contributed to the dissolution of the marriage."  Code § 20-107.1(E).  In addition, it is required to consider the parties' needs and financial resources, standard of living during the marriage, the duration of the marriage, and the ages and physical and mental condition of the parties.  Id. at (1)-(4).  The court must also consider the parties' nonmonetary and monetary contributions to the well-being of the family, their property interests, the equitable distribution of the marital property, and the earning capacities of each party.  Id. at (5)-(9).  Further, the court must take into account the ability and opportunity of each party to obtain skills to enhance his or her earning ability, the decisions regarding the employment of each party during the marriage, the extent to which either party contributed to the other party's career, and "[s]uch other factors . . . as are necessary to consider the equities between the parties."  Id. at (10)-(13).

- 6 -

<u>Duration of Spousal Support</u>

Wife contends the circuit court erred when it failed to properly consider the statutory factors in awarding a defined duration spousal support award. She argues that there was no evidence in the record that she could re-enter the workforce within five years. We disagree, finding that the record reflects that the circuit court considered the statutory factors contained in Code § 20-107.1(E) and that the court's consideration of these factors supported its conclusion that wife could re-enter the workforce within five years.

The circuit court's remand letter opinions contained additional, specific findings not found in the final order of divorce that were based on the evidentiary record established at trial. In its first letter opinion following remand, issued on December 10, 2018, the court found that in regard to the duration of spousal support,

> [five] years is a sufficient amount of time for [wife] to recover from her symptoms of depression and anxiety that were related to her separation and divorce at the conclusion of the litigation. The [c]ourt specifically finds that there was no evidence that [wife's] physical or cognitive impairment[] symptoms were permanent in nature, particularly in light of her testimony at trial and her interactions with her counsel during the trial. Absent signs of any impairment, the [c]ourt suspects that [wife] may be malingering with respect to her impairments in light of the difference in her demeanor between direct examination, cross examination and her overt participation in supporting her counsel. Nonetheless, assuming that [wife's] symptoms are valid, there [is] no evidence that she will not fully recover within the expected 12-18 month period. During the ensuing 5[-]year period, [wife] can continue to volunteer in a legal capacity under the direction of a licensed attorney, work as a paralegal in a paid capacity, or engage in other legal-related work, either in a paid or volunteer capacity. [Wife] may also fulfill her continuing education requirements as a licensed attorney. The [c]ourt finds that, in accordance with the [h]usband's expert witness's testimony, should the [w]ife be so inclined, she could be gainfully employed as an attorney within the 12-18 month period, earning a salary in the neighborhood of $80,000.00. A five[-]year award of support is sufficient to allow for her recovery and also give her additional time to be fully self-supporting.

The court further found that the eleven-year reservation of spousal support was "sufficient enough in length that, should [wife] be unable to find and maintain employment after the 5[-]year support period has ended, she may seek additional support."

In the circuit court's second letter opinion following remand, issued on November 14, 2019 on wife's motion to reconsider, the circuit court detailed its review of the medical expert testimony adduced at trial. The court noted that there was "conflicting evidence" as to whether wife's post-concussive syndrome symptoms precluded her employment. The court stated that wife's expert, Dr. Jon Peters, had diagnosed her with post-concussive syndrome and noted that he last saw her in his office in November 2015, nearly one year before trial. The court also noted that Dr. Peters opined that wife's symptoms could be caused by injuries or conditions other than a concussion, including stress. The court stated that while another expert witness for wife, Dr. Timothy Fratto, opined that wife had below-expected levels of performance on the tests he conducted, he only saw wife once to conduct his evaluation in June 2016 and did not see her clinically again. The court also highlighted his testimony that individuals who experience pain, headaches, or other physical problems and also have depression, anxiety, or stress may experience worsened physical symptoms as a result of their mental health issues. The court then noted that Dr. Donald Hope, who testified as an expert on behalf of husband, had evaluated wife on November 17, 2016, just a few weeks before trial. Dr. Hope had concluded that wife did not have post-concussive syndrome, or that if she did, it was very minimal and had lasted only a few weeks.

The circuit court found that, "[b]ased on the cumulative medical testimony presented," it "was most convinced by the testimony of Dr. Hope." The court noted that Dr. Hope had seen wife closest to the trial date, approximately three weeks before trial, as opposed to the several months that had elapsed since either Dr. Peters or Dr. Fratto physically examined her. The court

also found it significant that Dr. Hope had the opportunity to review all of the medical records of the treating physicians. The court stated that it did not discount the opinions of Dr. Peters and Dr. Fratto, and "in fact d[id] believe that at the time of the trial [wife] was suffering from some impairment, as the previous opinions of the [c]ourt ha[d] conveyed." Despite this finding, the court stated that it did "not believe that there existed at the time of the trial such debilitating impairment such that [wife] could not recover from the trauma of her physical injuries as well as a prolonged and stressful divorce." It concluded that "[b]ased on the direct observations of the [c]ourt of [wife] a[t] trial, as well as the medical examination conducted by Dr. Hope less than one month before trial, there [was] persuasive evidence that [wife] had already recovered significantly." The court found, "based on the information provided by all of the medical providers in this case, that [wife] had recovered significantly from the injuries sustained in 2013, 2014 and 2015 and is likely to continue doing so, particularly once the divorce and associated stress had been relieved." The court found that wife's "current, temporary cognitive disabilities may prevent her from working on her own as an attorney within the next 12-18 months, primarily due to the ethical obligations facing attorneys in Virginia." However, the court also found, relying on Dr. Hope's evidence, "that the remaining disability, if any, is or had dissipated." In addition, the court found wife to be an "intelligent and articulate woman who provided significant support to her counsel throughout the trial and post-trial matters."

Contrary to wife's argument that there was no evidence in the record that she could re-enter the workforce within five years, a review of the circuit court's extensive findings demonstrates that it relied on credible evidence in the record, including the medical evidence and its own observations of wife, in determining that she would be able to obtain employment within five years.

Here, the medical evidence supports the court's finding that wife could obtain employment within five years. Dr. Hope concluded that there was inadequate clinical evidence for wife's post-concussive syndrome diagnosis. He opined that wife either did not have post-concussive syndrome, or that if she had it, it was very minimal and had lasted only a few weeks. He testified that during his examination, wife did not appear to have any impairment demonstrating that she could not function normally. In addition, even the experts who testified for wife, Dr. Fratto and Dr. Peters, testified that most patients with post-concussive syndrome recover fairly promptly after their injury. However, wife notes that both doctors opined that a minority of patients have symptoms that last longer—Dr. Peters testified that the ten percent of patients that continue to have symptoms of post-concussion syndrome eighteen to twenty-four months after an injury are considered to have permanent symptoms, and Dr. Fratto testified that for twenty percent of post-concussive syndrome patients, symptoms could "last weeks, months, years, and sometimes permanently." Wife argues that there was no evidence at trial establishing that she was not in this ten to twenty percent of patients. We reject this argument, noting that there was also no testimony elicited at trial from either Dr. Peters or Dr. Fratto that wife was definitively in one of these categories.[5] In addition, the circuit court "was most convinced by the testimony of Dr. Hope," noting that that Dr. Hope was the practitioner that saw wife the closest to the trial date and also had the opportunity to review all of the medical records of the treating physicians. "Conflicting expert opinions constitute a question of fact . . . ." Frazer v. Frazer, 23 Va. App. 358, 366 (1996) (alteration in original) (quoting McCaskey v. Patrick Henry Hosp., 225 Va. 413, 415 (1983)). "[T]he trial court, as fact finder, 'has a right to weigh the testimony of *all*

---

[5] At trial, wife attempted to ask Dr. Peters if she was in the ten percent of patients whose symptoms are considered permanent, but after an objection from husband's counsel the court struck this question because this opinion was not provided in his report. Wife appealed this evidentiary ruling, which our Court affirmed on appeal. Ross, No. 0748-17-4, at *10.

- 10 -

*the witnesses, experts and otherwise*.'" Id. (quoting Bell Atlantic Network Servs. v. Va. Empl. Comm'n, 16 Va. App. 741, 746 (1993)). As fact finder, the circuit court had the discretion to determine what weight to give the expert testimony of the medical providers in this case, and in exercising this discretion found the opinion of Dr. Hope most persuasive.

Wife also argues that the circuit court's ruling that she would be employable within five years was flawed and not supported by the medical evidence, because the court itself acknowledged wife's cognitive issues could prevent her from seeking employment as an attorney at the time of trial. The court found that wife "was suffering from some incapacity in the months before and possibly carrying over to the time of the trial" and also found that wife's "current, temporary cognitive disabilities may prevent her from working on her own as an attorney within the next 12-18 months, primarily due to the ethical obligations facing attorneys in Virginia." However, the circuit court had an evidentiary basis for these findings along with its finding that wife could re-enter the workforce within twelve to eighteen months following trial. The court specifically found that wife had "*current, temporary* cognitive disabilities." (Emphasis added). The court's finding that wife's cognitive disabilities were temporary was supported by the testimony of Dr. Hope that wife's post-concussive syndrome was either non-existent or had resolved and also by the lack of testimony from Dr. Fratto and Dr. Peters regarding whether wife was in the category of patients whose symptoms were permanent. In addition, the medical evidence indicated that some of wife's cognitive issues could have been caused by the stress of the ongoing divorce, which would resolve following the end of the divorce litigation. Thus, based on medical evidence in the record, the circuit court determined that whatever cognitive disabilities wife had at trial would resolve within twelve to eighteen months, and this finding is supported by credible evidence in the record.

In addition to the medical evidence, the court also found that wife would be employable within five years following trial based on its own observations of wife during the trial. The court noted that it observed that wife was an intelligent and articulate woman who was able to provide support to her counsel throughout the trial and post-trial matters. It also noted that wife might be "malingering with respect to her impairments." "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*). "We defer to the trial court's evaluation of the credibility of the witnesses who testify *ore tenus*." Shackelford v. Shackelford, 39 Va. App. 201, 208 (2002). Here, the circuit court found that wife's participation in the trial and her demeanor while testifying supported Dr. Hope's medical opinion as to her employability within five years, and we cannot say that these findings are plainly wrong or without evidence to support them

Wife further argues that the court erred in awarding her a defined duration award of five years because this award involved assumptions based on uncertain future circumstances, including wife's health and employability, and not the current circumstances which were presented at trial.

Any award of spousal support "must be based upon the circumstances in existence at the time of the award." Barker, 27 Va. App. at 528 (quoting Payne v. Payne, 5 Va. App. 359, 363 (1987)). A circuit court's "[d]etermination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur." Keyser v. Keyser, 2 Va. App. 459, 461 (1986). Courts may not base spousal support on "an uncertain future circumstance." Jacobs v. Jacobs, 219 Va. 993, 995-96 (1979). However, a court may examine what a party's circumstances will be in the foreseeable future. "[T]he court, in setting support awards, must look to current circumstances and what the circumstances will be 'within the

- 12 -

immediate or reasonably foreseeable future,' not to what may happen in the future." <u>Srinivasan</u> <u>v. Srinivasan</u>, 10 Va. App. 728, 735 (1990) (quoting <u>Young v. Young</u>, 3 Va. App. 80, 81-82 (1986)).

Wife argues that the circuit court erred in its five-year duration of spousal support because it was based on uncertain future circumstances, as there was no evidence that her symptoms would alleviate in the future. As noted above, there was evidence in the record supporting the circuit court's finding that wife's cognitive disability at trial was temporary in nature; therefore, based upon the court's consideration of this evidence, we find that the court was properly examining the circumstances within the immediate or reasonably foreseeable future rather than an uncertain future circumstance.

Wife further argues that the court improperly considered circumstances not within the immediate or reasonably foreseeable future because it was not possible for Herman Broughton, a vocational rehabilitation counselor who testified on behalf of husband, to testify as to the future availability of entry-level attorney positions. Broughton testified as to entry-level attorney positions available when he conducted his market search on October 17, 2016, two months prior to trial. He did not testify as to what the legal market would be in twelve to eighteen months from trial, and the circuit court found that wife might be prevented from obtaining legal employment in Virginia for twelve to eighteen months from trial, due to her temporary cognitive difficulties and the ethical obligations attorneys face in Virginia. However, the circuit court also considered wife's extensive volunteer work in the legal field—it noted that wife had volunteered for the Good Samaritan Advocates as a *pro bono* attorney, had served as a parent appointee on the Loudoun County Public Schools Discipline Task Force, had served as a volunteer coordinator for a United States Senate candidate, had volunteered as an election day roving attorney, and had volunteered in several capacities for the Presbyterian Church all within five

years of trial. The court specifically found that during the five-year duration of spousal support, "[wife] can continue to volunteer in a legal capacity under the direction of a licensed attorney, work as a paralegal in a paid capacity, or engage in other legal-related work, either in a paid or volunteer capacity." Therefore, although Broughton's testimony did not establish what opportunities there would be for an entry-level attorney twelve to eighteen months from trial, the court had other factors it properly relied on—wife's volunteer experience, and the possibility of her working as a paralegal or engagement in some other legal-related work—in finding that she could obtain legal employment within the five years that she had been awarded spousal support. Accordingly, we conclude that the circuit court's finding regarding wife's employability was not based on an uncertain future circumstance but rather on circumstances that were within the immediate or reasonably foreseeable future at the time of trial.[6]

---

[6] Wife also contends the circuit court failed to include "written findings and conclusions" that "identify the basis for the nature, amount and duration of the award" for its defined duration award as required by Code § 20-107.1(F) and Cleary v. Cleary, 63 Va. App. 364 (2014). Code § 20-107.1(F) provides that "[i]f the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award." In Cleary, our Court found that the circuit court had adequately provided findings specifying the factors it considered in awarding spousal support under Code § 20-107.1(E). However, we found that "neither the final decree nor any ruling from the bench connected the factual findings to the limited duration of the award," which was error. Cleary, 63 Va. App. at 372. Wife argues that the circuit court committed the same error in the instant case. We find no merit in this argument.

As noted above, unlike the letter opinion issued in regard to the final divorce decree, we find that the circuit court's letter opinions on remand contained additional analysis relating to the basis for the duration of the spousal support award. In the court's letter opinions on remand, it recounted the medical evidence provided at trial and articulated its findings as to its weighing of that medical evidence. In addition, the court provided a lengthy analysis as to its determination of the five-year period of support and listed the factors it considered, including the medical evidence, the court's belief that wife may have been malingering with respect to her impairments, and her ability to continue to volunteer in legal positions until she found paid employment. On remand, the circuit court specifically explained its reasoning as to why it determined that wife could re-enter the workforce within twelve to eighteen months of trial. Therefore, we conclude that the court's ruling on remand regarding duration of the spousal support award complied with the requirements of both Code § 20-107.1(F) and Cleary.

- 14 -

## Amount of Spousal Support

Wife further argues the circuit court erred in failing to consider all statutory factors in making its award as to the amount of spousal support. Wife asserts that the court failed to articulate the findings or factors it considered in making its determination of the amount of spousal support. She also contends that the award would not afford wife the ability to live in the lifestyle to which the parties had become accustomed during the marriage. Contrary to wife's arguments, we conclude that the court did not err in its determination of the amount of spousal support awarded to her.

On remand, in making its spousal support award, the circuit court identified and discussed all of the factors set forth in Code § 20-107.1(E). In particular, in relation to the amount of spousal support awarded, the court found that husband's income from his employment with IBM was $260,000 per year and that wife was currently unemployed. It noted that both parties had approximately the same amount of financial resources after equitable distribution. In relation to expenses, the court found that both parties had "obligations with respect to their day to day living expenses" but also found "that the expenses claimed by [wife] were exaggerated by at least $2,500 per month." In addition, the court found that the parties had enjoyed a middle-class standard of living during the marriage. It found that husband was the primary monetary contributor to the marriage and that both parties provided nonmonetary contributions to the well-being of the family. The court found that by agreement of the parties, wife had been out of the workforce since 1997 raising the parties' two children, but that during that time she was very active in volunteer activities involving the children and the community. The court noted that husband had paid for wife's law degree and supported her efforts when she took and passed the Virginia Bar exam. The court also found that wife would be employable as an attorney within twelve to eighteen months of trial.

"The purpose of spousal support 'is to provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay.'" Miller v. Cox, 44 Va. App. 674, 684 (2005) (quoting Blank v. Blank, 10 Va. App. 1, 4 (1990)). In making this determination, the circuit court "must consider all the factors enumerated in Code § 20-107.1(E)," Fadness v. Fadness, 52 Va. App. 833, 846 (2008) (quoting Miller, 44 Va. App. at 679), and set forth "findings or conclusions identifying the [Code § 20-107.1(E) ] factors . . . that support the spousal support award," Robinson v. Robinson, 50 Va. App. 189, 196 (2007). Notably, however, "no one factor is dispositive," and "the court is not required . . . 'to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Robinson, 54 Va. App. at 91 (quoting Woolley v. Woolley, 3 Va. App. 337, 345 (1986)).

In the instant case, the circuit court made numerous findings of fact relative to the various Code § 20-107.1(E) factors. Those findings are supported by the evidence, viewed in the light most favorable to husband, and, in turn, support the circuit court's spousal support award.

The trial court spent considerable time explaining its spousal support award based on the factors contained in Code § 20-107.1(E). The trial court discussed the standard of living of the parties during the marriage, the contributions of the parties to the well-being of the family, the equitable distribution award, husband's contributions to wife's education, and wife's absence from the workforce along with her ability to re-enter the workforce.

In addition, the court specifically found that wife exaggerated her monthly needs in excess of $2,500. At trial, wife presented her income and expense sheet as an exhibit and testified that her expenses were $7,600 per month. She stated that one of her expenses was $566 a month for maintenance on the marital residence, which was contingent on her staying in the marital residence. In the final decree of divorce, the court ordered that the marital residence be

sold and that the parties divide the proceeds from the sale.  Wife also testified that she had researched how much her health insurance would cost following the divorce and that the premium and out-of-pocket costs would total $1,175 a month.  On cross-examination, wife admitted that she had not researched whether she could obtain a COBRA health insurance policy through husband's employment at IBM.  Husband testified at trial that he paid the real estate taxes for the marital residence and listed it as an expense of $510 on his income and expense sheet.

Here, wife testified as to her estimated health insurance costs following the divorce but admitted that she had not pursued all of her options for obtaining health insurance.  In addition, there was some dispute as to which party was paying the real estate taxes for the marital residence, as both husband and wife listed this as an expense on their income and expense sheets.  Wife also listed as an expense the upkeep of the marital home, which had been ordered to be sold in the final decree of divorce.  "[T]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Thomas v. Thomas, 40 Va. App. 639, 644 (2003) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995)).  The circuit court did not have a duty to accept a party's income and expense statement as an accurate reflection of the party's financial situation and instead had the responsibility to weigh each witness' testimony, and its findings in its remand letter opinions reflect that it did just that in the instant case.

Further, while wife argues that the award of $5,000 a month in spousal support does not afford her the ability to live in the lifestyle to which the parties had become accustomed during the marriage, we note that under Code § 20-107.1(E), the standard of living established during the marriage is only one of thirteen factors enumerated under subsection E for the court's consideration.  See Theismann v. Theismann, 22 Va. App. 557, 573 (rejecting wife's argument

that her spousal support award was inadequate even though it would not allow her to maintain the standard of living she had enjoyed during the marriage, where the court had considered all of the statutory factors), aff'd on reh'g *en banc*, 23 Va. App. 697 (1996).  Based on the court's consideration of all of the Code § 20-107.1(E) factors, we conclude the circuit court did not abuse its discretion in awarding wife spousal support in the amount of $5,000 per month.

### B.  NFCU-4078 Account[7]

Wife further argues that the circuit court erred in denying her motion for an alternate valuation date for the parties' joint bank accounts and in calculating the marital portion of the NFCU-4078 account.

### Motion for an Alternate Valuation Date

"On appeal, we review the court's determination of a valuation date for abuse of discretion."  Wright v. Wright, 61 Va. App. 432, 463 (2013) (quoting Thomas, 40 Va. App. at 647).  "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred."  Id. at 463-64 (alteration in original) (quoting Robbins, 48 Va. App. at 482).

Code § 20-107.3(A) establishes a presumption that the date of the evidentiary hearing should be used as the date of valuation of the parties' property.  See Code § 20-107.3(A) ("The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.").  However, this statute also provides that "[u]pon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used."  Id.

"Waste" is defined as the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy."  Booth v. Booth, 7 Va. App. 22, 27 (1988).  In

---

[7] This section of the opinion addresses wife's third and fourth assignments of error.

Clements v. Clements, 10 Va. App. 580, 586 (1990), this Court stated that using an alternative valuation date may be necessary if a spouse wastes marital assets after separation, because where "assets [are] wasted in anticipation of . . . divorce, equity can only be accomplished if the party who last had the funds is held accountable for them." Accordingly, "[o]nce the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Id. Further,

> the burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose. If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result.

Id. at 587; see also Anderson v. Anderson, 29 Va. App. 673, 694-95 (1999) ("As husband . . . withdrew the marital funds at issue and put them into an account under his sole dominion and control, husband had the burden to establish by a preponderance of the evidence that the funds were used for a proper purpose.").

Wife argues that the circuit court erred in refusing to grant her proposed alternate valuation date of November 16, 2015 for the parties' joint NFCU accounts and in finding that the sum of $19,638.77 spent from husband's NFCU-4078 account was not waste. After reviewing the record, we conclude that the circuit court did not err in finding that husband carried his burden of proving that the $19,638.77 in marital funds spent from his NFCU-4078 account were used for a proper purpose and thus did not constitute waste. Therefore, the court did not err in refusing to use November 16, 2015 as an alternate valuation date for the parties' joint accounts.

Prior to trial, wife filed a timely motion to use November 16, 2015 as an alternate valuation date for the parties' jointly held NFCU bank accounts, claiming that husband had transferred $44,655.19 of marital funds on that date and on a few days prior, and had used the

"funds for his sole benefit." At trial, husband testified as to his use of some of the $44,655.19 of marital funds that he deposited into the NFCU-4078 account. He stated that some of these funds "went back into the [marital] account to pay for certain bills, monthly stipend, the taxes on the house to be paid in December." He also testified that approximately $18,000 of the money was spent on expenses related to rent, utilities, and furniture for his newly rented townhouse. In addition, husband introduced a demonstrative exhibit at trial that highlighted those expenditures from November 19, 2015 through December 21, 2015 that he deemed were made for a proper purpose. The document listed the date, amount, and specific nature of each expenditure, including purchases of furniture, groceries, and utility connections. Husband also introduced his November and December 2015 bank statements for the NFCU-4078 account. In its November 14, 2019 letter opinion, the court specifically stated that it "spent a considerable amount of time reviewing the bank records for [the NFCU-4078] account" and "look[ed] to the actual amounts deposited and expended from [the NFCU-4078] account near the date of separation" to determine that husband had spent $19,638.77 of marital funds on non-waste expenditures shortly after the parties separated.

We conclude that the circuit court properly relied on husband's testimony, his demonstrative exhibit, and its own detailed examination of husband's bank statements in determining that of the $44,650.19 in marital funds deposited into husband's NFCU-4078 account, $19,638.77 of those funds were used for a proper purpose. See Clements, 10 Va. App. at 587 (explaining that marital funds spent post-separation on household expenses were for a proper purpose); Amburn v. Amburn, 13 Va. App. 661, 666 (1992) (finding that funds spent on personal living expenses did not constitute waste). Thus, the circuit court did not err in denying wife's motion for an alternate valuation date of November 16, 2015, because the court properly

found that of the $44,605.19 husband transferred from the parties' joint accounts, $19,638.77 of those sums were used for a proper purpose.

<u>Calculation of the Marital Portion of the NFCU-4078 Account</u>

Wife finally argues that the circuit court, having classified the NFCU-4078 account as marital on the date of separation, erred in finding the marital value of this account to be only $24,627.54.[8] She contends that the circuit court's classification of the account as hybrid was in error, and she asserts that she should receive $22,133.15 of the account, half of the $44,266.31 sum that was marital in nature.

On appellate review, a circuit court's equitable distribution award "will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" <u>Wiencko v. Takayama</u>, 62 Va. App. 217, 229-30 (2013) (quoting <u>McIlwain v. McIlwain</u>, 52 Va. App. 644, 661 (2008)). "Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." <u>Ranney v. Ranney</u>, 45 Va. App. 17, 31-32 (2005).

"Equitable distribution involves three distinct decisions: classification, valuation, and distribution." <u>Hamad v. Hamad</u>, 61 Va. App. 593, 602 (2013). "Property can be classified as marital, separate, or hybrid. Hybrid property involves a mixture of 'part marital property and part separate property.'" <u>Id.</u> (quoting Code § 20-107.3(A)(3)). "The party seeking to segregate the separate property bears the burden of proof to equitably trace the truly separate component. If a preponderance of the evidence fails to do so, the property remains fully marital." <u>Id.</u>

---

[8] Wife's assignment of error actually states that the court, having classified the NFCU-4078 account as marital on the date of separation, erred in finding the marital value of this account to be only $16,758. Wife acknowledges on brief that the use of the $16,758 figure was a typographical error.

(citation omitted). "In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset. This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset." Rahbaran v. Rahbaran, 26 Va. App. 195, 208 (1997). However, "if a party 'chooses to commingle marital and non-marital funds to the point that direct tracing is impossible,' the claimed separate property loses its separate status." Id. (quoting Melrod v. Melrod, 574 A.2d 1, 5 (Md. App. 1990)).

Generally, "property acquired by either party prior to the last separation is presumed to be marital . . . ." Dietz v. Dietz, 17 Va. App. 203, 210 (1993). Property acquired by one party after the date of the last separation "will not be marital property, unless it was obtained, at least in part, with marital funds." Id.

In the final decree of divorce, the circuit court classified the NFCU-4078 account as husband's separate property, based on the court's belief that the parties had stipulated that this account was separate property. In this Court's prior decision, we held that the circuit court's finding that the parties had stipulated that the NFCU-4078 account was husband's separate property was without evidence in the record to support it. Ross, No. 0748-17-4, at *8. We therefore remanded to the circuit court for a determination of the classification of the account, pursuant to Code § 20-107.3. Id.

On remand, the circuit court classified the NFCU-4078 account as hybrid because marital and separate property were comingled in the account between the date of separation and the trial date. The court made detailed findings in making this determination. The circuit court first noted that the parties agreed that two initial deposits, of $8,651.04 and $33,949.15, came from the parties' joint marital NFCU accounts. In addition, both parties conceded that $3,000 was transferred from husband's NFCU-4078 account back into the marital checking account. The

- 22 -

court found that $4,666.12 was transferred into the NFCU-4078 account prior to the parties'

separation, and because there was insufficient evidence to explain where the transfer came from,

the court deemed this sum marital.  Based on the total of these sums, the court concluded that

there were marital funds in the amount of $44,266.31 in the NFCU-4078 account at or near the

date of separation.  However, the court found that all subsequent deposits into the NFCU-4078

account following the parties' separation were made by husband and totaled more than $179,000

and that these deposits were traceable and retained their classification as husband's separate

property.  The court employed December 21, 2015 as an alternate valuation date for the marital

funds "in order to achieve an equitable result."[9]

While wife argues that the court's classification of the NFCU-4078 account as hybrid

was in error, we find no error in the court's classification of the account.  Here, the account came

into existence in October 2015, prior to the parties' separation, and thus the account was

presumed to be marital.  See Dietz, 17 Va. App. at 210.  Marital funds in the amount of

$44,266.31 were then deposited in the NFCU-4078 account at or near the date of separation.

However, following the parties' separation, all subsequent deposits were husband's separate

contributions that totaled $179,000.  Therefore, the NFCU-4078 account contained both marital

and separate property, and the court did not err in classifying the account as hybrid property.  See

Hamad, 61 Va. App. at 602.

Further, the record supports the circuit court's conclusion that the marital contribution to

the account as of December 21, 2015 was $24,627.54.  The court found that $44,266.31 of

---

[9] The court had initially utilized the Brandenburg formula to determine that husband's separate interest in the NFCU-4078 account was 80.2% and the marital share interest was 19.8%, and therefore because the value of the account as of the trial date was $16,758, the marital funds totaled $3,317.  See Hart v. Hart, 27 Va. App. 46, 65 (1998) (using the formula established in Brandenburg v. Brandenburg, 617 S.W.2d 871 (Ky. App. 1981), to calculate the portion of equity traceable to a separate contribution).  However, the court declined to accept this analysis in making its award, finding that this was "an inequitable result."

marital funds were placed in the NFCU-4078 account at or near the date of separation and that husband spent $19,638.77 of marital funds on appropriate, non-waste expenditures shortly after the parties separated. Husband's testimony, demonstrative exhibit, and bank statements provide evidence supporting this finding. Based on these sums, the court then found that the marital value of the NFCU-4078 account was $24,627.54 as of December 21, 2015, the last date that husband listed an expense relating to setting up his separate household following the parties' separation, and divided this sum between husband and wife. As we concluded *supra*, we find no error in this determination. Therefore, because husband carried his burden of proving that $19,638.77 in the marital funds expended from his NFCU-4078 account were used for a proper purpose and thus did not constitute waste, we reject wife's argument that instead of classifying the account as hybrid, the court should have found that the $44,266.31 sum was marital in nature and then awarded wife half that sum. Accordingly, we find no error in the circuit court's calculation of the marital portion of the NFCU-4078 account.

Attorney's Fees

Both parties request an award of the attorney's fees and costs incurred in connection with this appeal. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018); see also Rule 5A:30(b). In determining whether to award appellate attorney's fees and costs to a party, we consider a number of factors, including "whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" Friedman, 68 Va. App. at 546 (quoting Rule 5A:30(b)(3)-(4)); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). Here, based on the equities of the case, we deny each party's request for attorney's fees and costs.

## III.  CONCLUSION

We hold that the circuit court properly articulated its determination of the duration and amount of spousal support and did not err in this determination.  In addition, we hold that the circuit court did not err in denying wife's motion for an alternate valuation date for the parties' joint bank accounts and did not err in calculating the marital value of the NFCU-4078 account. Accordingly, we affirm.

<u>Affirmed.</u>